1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

8

## EASTERN DISTRICT OF CALIFORNIA

9

10

JOHN ALLEN GANN,

11                    Plaintiff,

Case No. 1:17–cv–00325–SKO

12          v.

13    NANCY A. BERRYHILL,

ORDER ON PLAINTIFF'S SOCIAL
SECURITY COMPLAINT

14    Acting Commissioner of Social Security,

15                    Defendant.

(Doc. 1)

16

17    _____/

18

### I.          INTRODUCTION

19

20          On March 6, 2017, Plaintiff John Allen Gann ("Plaintiff") filed a complaint under 42

U.S.C. §§ 405(g) and 1383(c) seeking judicial review of a final decision of the Commissioner

21    of Social Security (the "Commissioner" or "Defendant") denying his application for Disability

22    Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits.  (Doc. 1.)

23    The matter is currently before the Court on the parties' briefs, which were submitted, without

24    oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

25

### II.          BACKGROUND

26

27          On August 23, 2012, Plaintiff protectively filed applications for DIB and SSI, alleging

28

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge.  (Docs. 8, 9.)

that he became disabled on December 15, 2011, due to fibromyalgia, restless leg syndrome, tendonitis, gastritis, and schizophrenia. (Administrative Record ("AR") 180–94, 204, 208.) Plaintiff was 34 years old when he filed the application. (*See* AR 180 (listing Plaintiff's date of birth as May 18, 1978).) Plaintiff has a high school education, and he previously worked as a security guard from 2001 to 2004 and a maintenance worker from 2004 to 2011. (AR 209.)

## A. Relevant Medical Evidence[2]

### 1. Sierra View District Hospital

On April 13, 2012, Plaintiff presented to Sierra View District Hospital complaining of a burning sensation throughout his body. (AR 289.) Plaintiff was alert and cooperative, able to move all extremities, ambulatory, and in no apparent distress. (AR 290.) The examining doctor speculated Plaintiff may have fibromyalgia. (AR 294–95.)

### 2. Lindsay Family and Pediatrics

On May 12, 2012, Plaintiff presented to Lindsay Family and Pediatrics complaining of pain throughout his body and anxiety. (AR 330.) The doctor noted 14 trigger points. (AR 330.) Plaintiff's diagnosis included fibromyalgia and chronic back pain. (AR 330.)

Plaintiff returned to Lindsay Family and Pediatrics on June 16, 2012. (AR 328.) Since Plaintiff's treatment notes state he was diagnosed with schizophrenia at age 18, the doctor referred him to mental health. (AR 328.) Plaintiff returned to Lindsay Family and Pediatrics later in June for evaluation of his fibromyalgia. (AR 324.) His treatment notes provide a diagnosis of fibromyalgia, migraine headaches, asthma, and hypertension. (AR 324.) Plaintiff's doctor added bipolar disorder to his impairments in August 2012. (AR 316.)

Between August 2012 and August 2013, Plaintiff returned to Lindsay Family and Pediatrics approximately once a month for review of his medications and other concerns. (AR 301–20, 390–402.) Plaintiff was consistently alert, showed no edema or focal deficit, and his treating doctor made no notes suggesting any apparent distress. (AR 301–20, 390–402.)

---

[2] As Plaintiff's assertions of error are limited to the ALJ's discrediting of the medical opinion of Dr. Anthony Aguirre M.D., the ALJ's purported improper formulation of Plaintiff's mental RFC, and the ALJ's discrediting of Plaintiff's subjective complaints, only evidence relevant to those arguments is set forth in this Order.

### 3. Consultative Examiner Emmanuel Fabella, M.D.

On February 12, 2013, internist Emmanuel Fabella, M.D., performed an independent internal medicine consultation and reviewed Plaintiff's available medical records. (AR 355–61.) Plaintiff's principal complaint was fibromyalgia. (AR 355.) Plaintiff told Dr. Fabella that prolonged standing worsens his fibromyalgia symptoms and he needs to rest after walking half a block, but he could occasionally lift his 27-pound son. (AR 355.) Plaintiff stated his pain was mild to moderate and medication helped ease the pain. (AR 355.)

Dr. Fabella found Plaintiff to be cooperative, friendly, and displaying no signs of depression, delusional thought, or psychomotor retardation. (AR 358.) Dr. Fabella noted that Plaintiff moved briskly both in the examining room and out to the parking lot as he was going to his car. (AR 358.) Dr. Fabella's neurological examination found no weakness, numbness, light-headedness, or difficulty with coordination. (AR 357.) Plaintiff's hand grip strength measured 50 pounds on the right and 85 pounds on the left. (AR 357.) Examination of Plaintiff's hands showed loss of prominence of one joint in his right hand, but was otherwise unremarkable and he exhibited good hand coordination. (AR 359–60.) All range of motion testing was within normal limits. (AR 358–59.)

Based on the examination, Dr. Fabella concluded Plaintiff had fibromyalgia with more than 11 trigger points and medication only partially improved Plaintiff's condition. (AR 360.) Dr. Fabella opined Plaintiff had the residual functional capacity to lift and carry up to 20 pounds occasionally and 10 pounds frequently, stand and walk four to six hours in an eight-hour day, and sit without any restrictions. (AR 360.) Dr. Fabella further opined Plaintiff was capable of occasionally climbing, balancing, kneeling, crawling, bending, crouching, stooping, and walking on uneven terrain. (AR 360.) However, Dr. Fabella recommended that Plaintiff avoid climbing ladders, working at heights, and exposure to cold. (AR 360–61.)

### 4. Consultative Examiner Roger A. Izzi, Psy.D.

On February 12, 2013, Roger A. Izzi, Psy.D., performed a psychiatric evaluation of Plaintiff. (AR 364–67.) Plaintiff complained of high blood pressure, fibromyalgia, and depression as well as experiencing insomnia, occasional unprovoked crying spells, and auditory

hallucinations when alone.  (AR 364.)  Dr. Izzi observed Plaintiff was alert and responsive, fully oriented, and able to recall three words without any obvious difficulty.  (AR 365–66.)  Plaintiff spelled "world" correctly forward with no difficulty, but made two mistakes spelling "world" backward.  (AR 366.)  Dr. Izzi diagnosed Plaintiff with mood disorder, not otherwise specified.  (AR 366.)

Dr. Izzi concluded Plaintiff was cable of performing simple and repetitive type tasks on a consistent basis over an eight-hour period.  (AR 366.)  Dr. Izzi further opined that Plaintiff's mood disorder would fluctuate with Plaintiff's subjective perception of pain and that his ability to get along with his peers would be moderately limited by his mood disorder.  (AR 366.)  Plaintiff was capable of responding to usual work session situations regarding attendance and safety issues and dealing with changes in a routine work setting.  (AR 366–67.)  Plaintiff was also capable of managing his own finances.  (AR 367.)

### 5. Treating Physician Anthony Aguirre, M.D.

On April 8, 2014, Plaintiff presented to Anthony Aguirre, M.D. to establish care for fibromyalgia.  (AR 445–46.)  Plaintiff reported a history of chronic pain from fibromyalgia as well as anxiety issues and bipolar disorder.  (AR 445.)  Plaintiff further reported that the chronic pain got better during the day and medication helped alleviate the pain.  (AR 445.)  Dr. Aguirre noted Plaintiff was pleasant, alert, well nourished, and in no acute distress.  (AR 445.)  Dr. Aguirre also noted Plaintiff had many tender points and "slight" pain with range of motion, but range of motion was full.  (AR 445.)  Dr. Aguirre diagnosed Plaintiff with unspecified myalgia and myositis, anxiety, elevated blood pressure without diagnosis of hypertension, and fibromyalgia.  (AR 446.)  Dr. Aguirre prescribed medication for myalgia and myositis as well as anxiety, and renewed several other prescriptions.  (AR 446.)

Plaintiff returned to Dr. Aguirre several more times between May 2014 and February 2015.  (AR 420–22, 425–27, 430–31, 436–42, 472–75, 479–81.)  At each visit Plaintiff continued to be pleasant, alert, well nourished, and in no acute distress.  (AR 421, 426, 431, 437, 439, 441, 472, 474, 480.)  Plaintiff also continued to have full range of motion with "slight" pain, except on November 20, 2014, when Plaintiff reported "mild" pain with range of motion as

well as the inability to form a grip with his right hand.  (AR 421, 426, 431, 437, 440–41, 472, 474, 480.)  On February 19, 2015, Plaintiff reported to Dr. Aguirre that his depressive symptoms had improved.  (AR 479.)  Plaintiff felt tired and had little energy, but in the previous two weeks he had no trouble concentrating on things such as watching television and had no feelings of hopelessness or that he was a failure.  (AR 479.)  Plaintiff also reported that his medications made his chronic pain bearable, but did not relieve the pain entirely.  (AR 479.)

On April 14, 2015, Dr. Aguirre completed a Fibromyalgia Medical Source Statement for Plaintiff.  (AR 483–87.)  Dr. Aguirre identified the following signs and symptoms: history of widespread pain, 11 of 18 specific tender points, muscle pain, dizziness, insomnia, fatigue, depression, anxiety disorder, numbness or tingling, nausea, and nervousness.  (AR 483.)  Dr. Aguirre described Plaintiff's pain as occurring daily, moderate to severe in intensity, and achy/dull.  (AR 484.)  Dr. Aguirre opined Plaintiff did not have the stamina and endurance to work an easy job eight hours a day, five days a week due to Plaintiff's chronic pain, anxiety, and depression with the physical limitations as the "main problem."  (AR 485.)  Dr. Aguirre also stated Plaintiff needed a job that permitted him to shift positions at will, walk around every 30 minutes for five minutes at a time, take four to five unscheduled breaks for 20 minutes at a time, and elevate his legs to 90 degrees for 30% of each eight-hour workday.  (AR 486.)  Plaintiff had no significant limitations with reaching, handling or fingering, but was only capable of grasping, turning, twisting, engaging in fine finger manipulation, reaching in front and reaching overhead with each hand for 10% of each day.  (AR 486.)  Dr. Aguirre also found Plaintiff's symptoms would be severe enough to interfere with the attention and concentration needed to perform even simple work tasks 25% or more of each workday.  (AR 487.)  Ultimately, Dr. Aguirre concluded Plaintiff was incapable of tolerating even low stress jobs and would likely miss more than four days per month as a result of his impairments and treatment.  (AR 487.)

**6.      Treating Therapists Brooke A. Foster, Psy.D. and Dawn K. Miller, L.C.S.W.**

On July 22, 2014, Plaintiff presented to Brooke A. Foster Psy.D., for an initial therapy session.  (AR 434–35.)  Plaintiff reported a long-term history of depression and anxiety for which he was taking medication, which was not helping.  (AR 434.)  Dr. Foster advised Plaintiff

to discuss his medication concerns with his primary care physician.  (AR 434.)  Plaintiff's diagnosis included depressive disorder and anxiety.  (AR 434.)

On August 28, 2014, Plaintiff returned to Dr. Foster and reported he had experienced panic attacks and auditory hallucinations.  (AR 432.)  Dr. Foster added possible psychosis to Plaintiff's diagnosis.  (AR 432.)  When Plaintiff returned to Dr. Foster for an appointment on September 10, 2014, Plaintiff reported no current hallucinations.  (AR 428.)  Plaintiff also reported he had significant pain and some days were worse than others, but he had recently attended a support group for individuals with fibromyalgia, which was helpful.  (AR 428.)

Plaintiff subsequently changed therapists and on October 30, 2014, Plaintiff presented to Dawn K. Miller, L.C.S.W., for an initial therapy session.  (AR 422–24.)  Ms. Miller noted Plaintiff's mood was depressed and worried, but he was cooperative, oriented, had normal psychomotor activity, good eye contact, intact thought process, and unremarkable thought content.  (AR 424.)

Plaintiff returned to Ms. Miller on December 11, 2014, and January 26, 2015.  (AR 470–71, 476–77.)  During the December 2014 visit, Plaintiff reported intrusive thoughts that seemed to come from outside his head as well as fatigue and loss of interest in pleasure or normal activities.  (AR 470.)  During the January 2015 visit, Plaintiff reported feeling depressed or hopeless more than half the days, having little interest or pleasure in doing things, feeling tired, and having trouble concentrating on things such as watching television—nearly every day.  (AR 476.)  Plaintiff also reported he continued to struggle with chronic pain, but showers helped relieve the pain.  (AR 476.)  Ms. Miller noted during both visits Plaintiff lost his train of thought and reported unusual experiences, but denied hallucination.  (AR 471, 477.)

### 7.     State Agency Physicians

On March 8, 2013, Dr. I. Ocrant, M.D., Disability Determination Services medical consultant, reviewed the medical evidence of record and concluded Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently; sit, stand and walk six hours in an eight-hour day; and occasionally climb, stoop, kneel, crouch, and crawl.  (AR 72–73.)  Dr. Ocrant found no manipulative, visual, communicative, or environmental limitations.  (AR 73.)

On March 15, 2013, a Disability Determination Services mental health consultant, Dr. G. Ikawa, M.D., reviewed the evidentiary record and concluded Plaintiff's mental impairments were non-severe. (AR 69–70.)

Upon reconsideration, on October 11, 2013, another Disability Determination Services mental health consultant, Dr. A. Garcia, M.D., affirmed Dr. Ikawa's opinion that Plaintiff's mental impairments were non-severe. (AR 96–97.) Additionally, on October 17, 2013, another Disability Determination Services medical consultant, Dr. Sadda V. Reddy, M.D., performed an independent review of Plaintiff's medical records and affirmed Dr. Ocrant's opinion. (AR 99–100.) Dr. Reddy stated that there was no evidence of any worsening of Plaintiff's fibromyalgia and noted that Plaintiff had normal range of motion, no joint swelling, and no focal deficits. (AR 99.)

**B.    Administrative Proceedings**

The Commissioner denied Plaintiff's applications for DIB and SSI initially on March 21, 2013, and again on reconsideration on October 17, 2013. (AR 118–22, 128–33.) Consequently, on November 15, 2013, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 134–36.) At the hearing on March 12, 2015, Plaintiff appeared with counsel and testified before an ALJ as to his alleged disabling conditions. (AR 12; *see generally* AR 27–63.)

**1.    Plaintiff's Testimony**

Plaintiff testified that he suffers from fibromyalgia, which causes pain in his upper chest, shoulders, hips, and calves. (AR 38.) Plaintiff testified that the pain is generally mild, that he feels it in his muscles rather than in his joints, and that he experiences flare-ups of his pain three to four times a month, which generally last for three days. (AR 38–39.) Plaintiff has taken several medications to manage the pain and symptoms, and, according to Plaintiff, they somewhat ease the pain. (AR 40.) Plaintiff also treats the pain with icy-hot products, Epsom salt baths, and a heating pad, which provide temporary relief. (AR 40.)

Plaintiff also experiences restless leg syndrome on a nightly basis. (AR 40–41.) It was initially treated with Soma, which Plaintiff testified caused bad side effects, then Ibuprofen,

which Plaintiff testified did not help, and finally Tizanidine, which Plaintiff testified eased the pain. (AR 41.)

Plaintiff testified that, as a result of these physical impairments, he can stand only approximately 22 minutes without sitting. (AR 42.) He can walk a block to a block and a half, sit for 45 minutes to an hour, and experiences dizziness when he bends over. (AR 42.) He also suffers sleep deprivation and gets a good night sleep only three to four times a week. (AR 45–46.) Plaintiff can, however, climb stairs without difficulty and lift his daughter, who weighs 13 pounds, without any pain. (AR 42–43.)

With regard to mental impairments, Plaintiff testified that he suffers from depression. (AR 43.) During his episodes of depression, Plaintiff has difficulty concentrating, memory problems, has thoughts of worthlessness and suicide, and experiences anxiety around people. (AR 43–45, 48.) Plaintiff's depression has been treated with hydroxyzine, Cymbalta, and Lyrica, but, according to Plaintiff, to no avail. (AR 45.) As a result of his depression and related symptoms, Plaintiff can watch television for only about a half an hour, and his wife manages the household finances. (AR 44.)

Plaintiff lives with his wife and children, and does not drive. (AR 32.) With regard to his daily activities, Plaintiff testified that he dresses himself but sometimes needs help getting into the shower. (AR 33.) He performs some household chores, including cooking and cleaning, but he does not shop for groceries. (AR 33.) Plaintiff's social life is limited to occasional visits from his mother. (AR 33.) On a typical day when Plaintiff is not experiencing any severe pain or symptoms, he wakes up, prepares breakfast for his daughter, cleans the house, washes dishes, rests for a while until his body stops aching, continues to clean the house, watches television, and listens to music. (AR 34.) On a typical bad day, Plaintiff remains in bed, beneath the covers, either sleeping or watching television. (AR 34.)

### 2.    Vocational Expert's Testimony

A Vocational Expert ("VE") testified at the hearing that Plaintiff has past work experience as (1) a conveyor tender, Dictionary of Operational Titles ("DOT") code 921.685-026, which was medium work (but light as performed by Plaintiff), with a specific vocational

preparation ("SVP") of 2; (2) cleaner, industrial, DOT code 381.657-018, which was medium work, with an SVP of 2; (3) washer, agricultural produce, DOT code 529.685-258, which was light work, with an SVP of 2; and (4) pulp tender extract operator, DOT code 521.685-262, which was medium work, with an SVP of 2.  (AR 56–58.)

The ALJ asked the VE a hypothetical question, in which the VE was to consider a person of Plaintiff's age, education, and work experience, who can occasionally lift or carry 20 pounds, frequently lift or carry 10 pounds, sit, stand, or walk six to eight hours in an eight-hour workday with occasional stooping, crouching, crawling, climbing, and kneeling.  (AR 59.)  The ALJ then asked the VE whether, given this, such a person could perform any of Plaintiff's past work.  (AR 59.)  The VE testified that such a hypothetical person could perform Plaintiff's past job as a conveyor tender, not as defined by the DOT but as Plaintiff performed it in the past, and as an agricultural produce washer, as defined by the DOT rather than the medium level at which Plaintiff actually performed it in the past.  (AR 59.)

The ALJ then asked the VE a second hypothetical question considering the same person with the same capabilities as outlined in the first hypothetical, but who is limited to simple, routine tasks.  (AR 60.)  The VE testified that such a person could perform Plaintiff's past work as it was outlined in response to the first hypothetical question.  (AR 60.)

The ALJ asked the VE a third hypothetical question considering the same person as outlined in the first hypothetical, but who can occasionally lift or carry 10 pounds, frequently lift or carry 10 pounds, sit six to eight hours in an eight-hour workday, stand or walk two hours in an eight-hour workday, with occasional stooping, crouching, crawling, climbing, and kneeling, and perform only simple, routine tasks.  (AR 60.)  The VE testified that such a hypothetical person could not perform Plaintiff's past jobs, but that he could perform the following unskilled, sedentary jobs: (1) hand bander, DOT code 920.687-030, SVP of 2, for which there exists 3,233 jobs statewide, and 22,944 nationally; (2) eye-dropper assembler, DOT code 739.687-086, SVP of 2, for which there exists 2,859 jobs statewide, and 29,861 jobs nationally; and (3) table worker, DOT code 739.687-182, SVP of 2, for which there exist 1,608 jobs statewide, and 13,911 jobs nationally.  (AR 60–61.)

The ALJ asked the VE a fourth hypothetical question considering the same person with the same limitations as outlined in the third hypothetical, but who would need an additional two to four breaks in an eight-hour workday. (AR 61.) The VE testified that there would be no work for such a person. (AR 61.)

The ALJ asked the VE a fifth hypothetical question considering the same person with the same limitations as outlined in the third hypothetical, but who would be absent from work four days a month. (AR 61.) The VE testified that there would be no work for such a person. (AR 61.)

**C.    The ALJ's Decision**

In a decision dated June 19, 2015, the ALJ found that Plaintiff was not disabled. (AR 12–21.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. §§ 416.920 and 404.1520. (*See generally* AR 13–14.) The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date, December 15, 2011. (AR 14.) At Step Two, the ALJ found that Plaintiff had the severe impairments of fibromyalgia, anxiety, and depression. (AR 14.) At Step Three, the ALJ determined that Plaintiff had the RFC:

> to lift and carry up to 20 pounds occasionally and 10 pounds frequently, and sit, stand and walk 6 to 8 hours in an 8-hour workday. He is able to occasionally stoop, crouch, crawl, climb and kneel. The claimant is capable of performing simple, routine tasks.

(AR 16.) Of particular relevance to the claims asserted by Plaintiff in the instant action, the ALJ discounted Dr. Aguirre's opinion regarding Plaintiff's physical RFC because it "contrast[ed] sharply with the claimant's own testimony regarding his limitations." (AR 18.) With regard to Plaintiff's mental RFC, the ALJ afforded "great weight to the opinion of Dr. Izzi." (AR 18.) Finally, the ALJ found Plaintiff's statements concerning his symptoms "not entirely credible" because his depressive symptoms were improving and Plaintiff's statements were contradicted by the objective medical evidence and Plaintiff's daily activities. (AR 20.) The ALJ ultimately found, given Plaintiff's RFC, that he was not disabled because he could perform past relevant work as a conveyor tender and agricultural produce washer. (AR 20.)

1    Plaintiff sought review of this decision before the Appeals Council, which denied review

2    on January 4, 2017.  (AR 1–6.)  Therefore, the ALJ's decision became the final decision of the

3    Commissioner.  20 C.F.R. §§ 404.981, 416.1481.

4    **D.    Plaintiff's Appeal**

5        On March 6, 2017, Plaintiff filed a complaint before this Court seeking review of the

6    ALJ's decision.  (Doc. 1.)  Plaintiff claims that the ALJ erred in three respects: (1) the ALJ

7    failed to articulate sufficient reasons for discrediting Dr. Aguirre's physical RFC opinion; (2) the

8    ALJ failed to consider all Plaintiff's limitations in her mental RFC analysis; and (3) the ALJ

9    failed to articulate clear and convincing reasons for discrediting Plaintiff's subjective

10   complaints.  (*See generally* Doc. 15 at 8–12.)

11                    **III.        SCOPE OF REVIEW**

12       The ALJ's decision denying benefits "will be disturbed only if that decision is not

13   supported by substantial evidence or it is based upon legal error."  *Tidwell v. Apfel*, 161 F.3d

14   599, 601 (9th Cir. 1999).  In reviewing the Commissioner's decision, the Court may not

15   substitute its judgment for that of the Commissioner.  *Macri v. Chater*, 93 F.3d 540, 543 (9th

16   Cir. 1996).  Instead, the Court must determine whether the Commissioner applied the proper

17   legal standards and whether substantial evidence exists in the record to support the

18   Commissioner's findings.  *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

19       "Substantial evidence" means "such relevant evidence as a reasonable mind might accept

20   as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting

21   *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)).  "Substantial evidence is more

22   than a mere scintilla but less than a preponderance."  *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d

23   1194, 1198 (9th Cir. 2008).  The Court "must consider the entire record as a whole, weighing

24   both the evidence that supports and the evidence that detracts from the Commissioner's

25   conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence."

26   *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation

27   marks omitted).

28   //

# IV.     APPLICABLE LAW

An individual is considered disabled for purposes of disability benefits if he or she is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months.   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003).   The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy.   42 U.S.C. §§ 423(d)(2)–(3), 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability.   In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity.   20 C.F.R. §§ 404.1520(b), 416.920(b).   If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting him from performing basic work activities.   *Id*. §§ 404.1520(c), 416.920(c).   If so, in the Third Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1.   *Id*. §§ 404.1520(d), 416.920(d).   If not, in the Fourth Step, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform his past work.   *Id*. §§ 404.1520(f), 416.920(f).   If not, in Step Five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy.   *Id*. §§ 404.1520(g), 416.920(g).   If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps.   *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

# V.        DISCUSSION

In his Opening Brief, Plaintiff contends that the ALJ failed to articulate sufficient reasons for discrediting Dr. Aguirre's physical RFC opinion, to account for all Plaintiff's limitations in determining Plaintiff's mental RFC, and to articulate clear and convincing reasons for discrediting Plaintiff's subjective complaints. (*See generally* Doc. 15 at 8–12.) Defendant responds that the ALJ properly weighed the conflicting evidence regarding Plaintiff's physical limitations, accounted for Plaintiff's moderate mental limitations by limiting Plaintiff to simple and routine tasks, and properly discredited Plaintiff's subjective complaints.

## A.    The ALJ's Consideration of the Medical Opinions

### 1.    Legal Standard

The ALJ must consider and evaluate every medical opinion of record. *See* 20 C.F.R. §§ 404.1527(b) and (c) (applying to claims filed before March 27, 2017), 416.927 (b) and (c) (same); *Mora v. Berryhill*, No. 1:16–cv–01279–SKO, 2018 WL 636923, at *10 (E.D. Cal. Jan. 31, 2018). In doing so, the ALJ "cannot reject [medical] evidence for no reason or the wrong reason." *Mora*, 2018 WL 636923, at *10.

Cases in this circuit distinguish between three types of medical opinions: (1) those given by a physician who treated the claimant (treating physician); (2) those given by a physician who examined but did not treat the claimant (examining physicians); and (3) those given by a physician who neither examined nor treated the claimant (non-examining physicians). *Fatheree v. Colvin*, No. 1:13–cv–01577–SKO, 2015 WL 1201669, at *13 (E.D. Cal. Mar. 16, 2015). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (citations omitted); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) ("By rule, the Social Security Administration favors the opinion of a treating physician over non-treating physicians." (citing 20 C.F.R. § 404.1527)). The opinions of treating physicians "are given greater weight than the opinions of other physicians" because "treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an

individual." *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996) (citations omitted).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995). In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate reasons that are supported by substantial evidence." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (citing *Ryan*, 528 F.3d at 1198); *see also Lester*, 81 F.3d at 830–31. "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Trevizo*, 871 F.3d at 675 (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing *Magallanes*, 881 F.2d at 751). The regulations require the ALJ to weigh the contradicted treating physician opinion, *Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001),[3] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); *see also Magallanes*, 881 F.2d at 751. The opinion of a non-examining professional, by itself, is insufficient to reject the opinion of a treating or examining professional. *Lester*, 81 F.3d at 831.

After properly weighing the physicians' opinions and determining the claimant's RFC, the ALJ may pose a range of hypothetical questions to a VE predicated on the ALJ's final RFC assessment. However, the hypothetical relied upon must account for all of the limitations and restrictions of the particular claimant. *Bray v. Comm'r of Soc. Sec.*, 554 F.3d 1219, 1228 (9th

---

[3] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; and (6) specialization. 20 C.F.R. §§ 404.1527, 416.927.

Cir. 2009). "If an ALJ's hypothetical does not reflect all of the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *Id.* (internal quotations omitted). Nonetheless, "an ALJ may synthesize and translate assessed limitations into an RFC assessment (and subsequently into a hypothetical to the vocational expert) without repeating each functional limitation verbatim in the RFC assessment or hypothetical." *Gibson v. Astrue*, No. 2:11–cv–3330–KJN, 2013 WL 417774, at *12 (E.D. Cal. Jan. 31, 2013) (citing *Stubbs–Danielson v. Astrue*, 539 F.3d 1169, 1173–74 (9th Cir. 2008)); *Pittman v. Colvin*, No. 2:15–cv–0819 CKD, 2016 WL 1545534, at *3 (E.D. Cal. Apr. 15, 2016).

### 2. The ALJ Stated Sufficient Reasons for Rejecting Dr. Aguirre's Opinion.

Dr. Aguirre treated Plaintiff between April 2014 and February 2015 and completed a Fibromyalgia Medical Source Statement for Plaintiff on April 25, 2015. (AR 420–22, 425–27, 430–31, 436–46, 472–75, 479–81, 483–87.) At each visit, Dr. Aguirre regularly observed Plaintiff to be pleasant, alert, well nourished, and in no acute distress, and found Plaintiff to have full range of motion with "slight" pain. (AR 421, 426, 431, 437, 439–41, 444, 472, 474, 480.) When Dr. Aguirre completed the Fibromyalgia Medical Source Statement in April 2015, Dr. Aguirre identified the following signs and symptoms: history of widespread pain, 11 of 18 specific tender points, muscle pain, dizziness, insomnia, fatigue, depression, anxiety disorder, numbness or tingling, nausea, and nervousness. (AR 483.) Dr. Aguirre also described Plaintiff's pain as occurring daily, moderate to severe in intensity, and achy/dull. (AR 484.)

Based on these findings, Dr. Aguirre concluded Plaintiff was only capable of working if the job permitted him to: (1) shift positions at will, (2) walk around every 30 minutes for five minutes at a time, (3) take four to five unscheduled breaks for 20 minutes at a time, (4) elevate his legs to 90 degrees for 30% of each eight-hour workday, (5) grasp, turn, twist, engage in fine finger manipulation, reach in front and reach overhead with each hand for no more than 10% of each day, and (6) miss more than four days a month. (AR 486–87.) Dr. Aguirre also found Plaintiff's symptoms would be severe enough to interfere with the attention and concentration

15

needed to perform even simple work tasks 25% or more of each workday, thereby making Plaintiff incapable of tolerating even low stress jobs.  (AR 487.)

In rejecting Dr. Aguirre's opinion, the ALJ stated:

> Little weight is given to the opinion of treating physician Dr. Aguirre.  His restrictions contrast sharply with the claimant's own testimony regarding his limitations, as reflected below.  Based on these contradictions, I have discounted much of the doctor's opinion.

(AR 18.)

An ALJ may properly discount a treating physician's opinion that is inconsistent with the claimant's own testimony.  *Ryan-Werry v. Colvin*, 641 F. App'x 684, 686 (9th Cir. 2015) (citing *Morgan v. Comm'r of Soc. Sec.*, 169 F.3d 595, 602–03 (9th Cir. 1999)) (upholding an ALJ's rejection of a treating physician's opinion where the "ALJ cited to testimony from [the claimant] that conflicted with the" physician's testimony); *see also Magallanes*, 881 F.2d 751–55. Although not specifically identified by the ALJ as a basis for its rejection, Dr. Aguirre's opinion is contradicted by the medical opinion evidence of consultative examiner Dr. Fabella and Disability Determination Services non-examining consultants Drs. Ocrant and Reddy.  These three physicians all agreed that Plaintiff could (1) lift and carry 20 pounds occasionally and 10 pounds frequently; (2) sit at least six hours in an eight-hour day; (3) stand and walk at least four to six hours in an eight-hour day; and (4) occasionally climb, stoop, kneel, crouch and crawl. (AR 72–73, 99–100, 360.)   Thus, the ALJ was required to state "specific and legitimate" reasons, supported by substantial evidence, for rejecting Dr. Aguirre's opinion.  *Trevizo*, 871 F.3d at 675 (9th Cir. 2017) (citing *Ryan*, 528 F.3d at 1198); *see also Lester*, 81 F.3d at 830.

Here, the ALJ noted that Plaintiff testified he could sit down for 45 minutes to an hour before he needed to stand.  (AR 20, 42.)  However, Dr. Aguirre's opinion states that Plaintiff would need to shift positions at will and walk around every 30 minutes for five minutes at a time.  (AR 486.)  The ALJ also noted that Plaintiff also testified he regularly performed some cooking and cleaning, made breakfast for his daughter and did the dishes, and could walk a block and a half.  (AR 19–20, 33–34, 42.)  However, Dr. Aguirre's opinion states that Plaintiff was incapable of tolerating even low stress jobs and his symptoms would be severe enough to

interfere with the attention and concentration need to perform even simple work tasks 25% or more of each workday. (AR 487.) Dr. Aguirre also opined that Plaintiff would need to elevate his legs to 90 degrees for 30% of the workday, but Plaintiff at no time reported a need to elevate his legs. (AR 17, 19–20 (summarizing Plaintiff's testimony), 486.) Such sharp contradictions between Plaintiff's testimony and Dr. Aguirre's opinion constitute "specific and legitimate" reasons for rejecting Dr. Aguirre's opinion.

In sum, the Court finds that the ALJ provided specific, legitimate reasons supported by substantial evidence for discounting Dr. Aguirre's opinion that Plaintiff needed a job that permitted him to: (1) shift positions at will, (2) walk around every 30 minutes for five minutes at a time, (3) take four to five unscheduled breaks for 20 minutes at a time, (4) elevate his legs to 90 degrees for 30% of each eight-hour workday, (5) grasp, turn, twist, engage in fine finger manipulation, reach in front and reach overhead with each hand for no more than 10% of each day, and (6) miss more than four days a month. Accordingly, this Court will not disturb the ALJ's decision. *Tidwell*, 161 F.3d at 601 ("The ALJ's decision denying benefits will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error.").

### 3. The ALJ Properly Formulated Plaintiff's Mental RFC.

In assessing Plaintiff's mental RFC, the ALJ found Plaintiff was limited to simple, routine tasks. (AR 16.) Plaintiff contends the ALJ made two errors related to Plaintiff's mental RFC. First, Plaintiff asserts the RFC assessment and corresponding questions to the VE do not account for the moderate limitation in Plaintiff's ability to get along with peers or be supervised in a work-like setting identified by Dr. Izzi. (Doc. 15 at 10.) Second, Plaintiff asserts the ALJ's hypothetical questions to the VE should have included the ALJ's finding that Plaintiff has moderate difficulties with concentration, persistence, or pace. (Doc. 15 at 10.) Both contentions are without merit.

//

//

### a. The ALJ Adequately Considered the Mental Limitations Identified by Dr. Izzi.

The ALJ gave great weight to the opinion of consultative examiner Dr. Izzi who opined that Plaintiff had moderate difficulties getting along with peers or being supervised in a work-like setting. (AR 18, 366.) The ALJ adequately incorporated these limitations in Plaintiff's mental RFC and related hypothetical questions to the VE.

A limitation to simple tasks performed in unskilled work adequately encompasses moderate limitations with social functioning including getting along with peers and responding appropriately to supervisors.[4] *See Rogers v. Comm'r of Soc. Sec.*, 490 F. App'x 15, 17–18 (9th Cir. 2012) (holding that an RFC limited to simple, routine tasks, which did not expressly note the claimant's moderate limitations in interacting with others, nonetheless adequately accounted for difficulties with social functioning); *see also Menges v. Berryhill*, No. 1:16–cv–01766–BAM, 2018 WL 1567786, at *8 (E.D. Cal. Mar. 30, 2018) (finding limitation to simple, routine tasks adequately considered claimant's moderate limitations in getting along with peers or being supervised in a work-like setting); *Messerli v. Berryhill*, No. 1:16–cv–00800–SKO, 2017 WL 3782986, at *11 (E.D. Cal. Aug. 31, 2017 (finding limitation to "simple repetitive tasks" accounted for moderate limitations in claimant's ability to accept instructions from supervisors and interact appropriately with coworkers and the public); *Henry v. Colvin*, No. 1:15–cv–00100–JLT, 2016 WL 164956, at *18 (E.D. Cal. Jan. 14, 2016) (finding restriction to simple tasks encompassed claimant's moderate limitations in dealing with changes, social interaction, and low stress tolerance); *Langford v. Astrue*, No. CIV S–07–0366 EFB, 2008 WL 2073951 at *7 (E.D. Cal. May 14, 2008) ("unskilled work . . . accommodated [the] need for 'limited contact with others'").

Here, the ALJ accounted for Dr. Izzi's finding that Plaintiff had moderate difficulties getting along with peers or being supervised in a work-like setting by limiting Plaintiff's mental RFC to simple, routine tasks. (AR 16.) Likewise, the ALJ included these moderate difficulties

---

[4] Unskilled work is defined as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. §§ 404.1568; 416.968. Unskilled work does not require working with people. 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rules 201.00(I), 202.00(g).

in the hypothetical questions to the VE by specifically asking the VE if a hypothetical claimant limited to simple, routine tasks could perform Plaintiff's past relevant work or other work in the national economy. (AR 60.) The ALJ properly synthesized Plaintiff's functional limitations when formulating her questions regarding Plaintiff's capabilities and was not required to specifically state every functional limitation in each hypothetical question to the VE. *Gibson*, 2013 WL 417774 at *12; *Pittman*, 2016 WL 1545534, at *3. Accordingly, the ALJ adequately incorporated the limitations identified by Dr. Izzi in Plaintiff's mental RFC and related hypothetical questions to the VE.

### b. The ALJ Properly Accounted for the Step Three Findings in Plaintiff's Mental RFC.

The ALJ did not err by failing to include Plaintiff's difficulties with concentration, persistence, or pace in the mental RFC or to explicitly mention those difficulties in the hypothetical questions posed to the VE. An RFC determination limiting a claimant to "simple, routine tasks" adequately captures limitations in concentration, persistence, or pace where the determination is consistent with the restrictions identified in the medical evidence. *See Stubbs-Danielson*, 539 F.3d at 1174 ("[A]n ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony."); *see also Bennett v. Colvin*, 202 F. Supp. 3d 1119, 1126–27 (N.D. Cal. 2016) (affirming the ALJ's decision where the ALJ found mild to moderate difficulties with concentration, persistence or pace at Step Three and medical evidence in the record supported the ALJ's mental RFC limiting the claimant to "light work" and "simple, repetitive tasks equating to unskilled work"); *Bottoms v. Comm'r of Soc. Sec.*, No. 2:13–cv–322–CMK, 2014 WL 5501223, at *8 (E.D. Cal. Oct. 30, 2014) ("As to plaintiff's argument that the ALJ erred in not including his step three finding that she had moderate difficulties in concentration, persistence, or pace, in the RFC, the undersigned agrees with the defendant that limitations identified in step three are 'not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3.' . . . This is especially true where, as here, the ALJ relied on the concrete restrictions as opined by the medical professionals."); *Pruitt v. Berryhill*, No.

19

EDCV 16–2416–JPR, 2017 WL 4804356, at *16 (C.D. Cal. Oct. 24, 2017) (holding the ALJ properly considered his Step Three findings in limiting the claimant's mental RFC to "noncomplex routine" tasks where the mental RFC was supported by medical evidence in the record).

Here, the medical evidence supports an RFC limiting Plaintiff to simple, routine tasks.  In fact, the ALJ gave great weight to opinion of Dr. Izzi, who expressly opined that Plaintiff was "capable of performing a simple and repetitive type task on a consistent basis over an eight-hour period."  (AR 366.)  In examining Plaintiff, Dr. Izzi also noted that Plaintiff had no difficulty spelling "world" forward, but made two errors spelling "world" backward.  (AR 366.)  Thus, there is medical evidence in the record to support a finding that limits Plaintiff to simple, routine tasks and the ALJ did not err in translating her finding of a moderate limitation in concentration, persistence, or pace into a restriction to simple, routine tasks.  *Conley v. Berryhill*, No. 1:16–cv–944–GSA, 2017 WL 4310249, at *10–11 (E.D. Cal. Sept. 28, 2017) (finding a mental RFC limited to simple, repetitive tasks supported by the opinion of a consultative examiner encompassed claimant's moderate difficulties with concentration, persistence, and pace found at Step Two).

Plaintiff's reliance on *Brink v. Comm'r Soc. Sec.*, 343 F. App'x 211, 212 (9th Cir. 2009), an unpublished Ninth Circuit memorandum decision, for the proposition that the ALJ's simple, routine task limitation does not encompass moderate functional limitations such as concentration, persistence, or pace is misplaced.  (Docs. 15 at 10, 19 at 4–5.)   As one published district court opinion described cases applying *Brink*: "[C]ourts have interpreted *Brink* as limited to cases in which medical evidence demonstrates the plaintiff's difficulties in concentration, persistence, or pace, but does not demonstrate that these may be translated into limitations to simple or repetitive work."  *Bennett*, 202 F. Supp. 3d at 1127.  *Brink* is also limited to the circumstance where there is a concrete limitation in the medical record that the ALJ fails to adequately consider in formulating the claimant's RFC.  *Bottoms*, 2014 WL 5501223, at *8 ("This is opposed to a situation [in *Brink*] where there is an affirmative medical opinion in the record indicating more significant restrictions[.]"); *Messerli*, 2017 WL 3782986, at *11 ("In this

20

case . . . unlike *Brink*—Dr. McNairn's opinion did not include an explicit limitation on concentration, persistence, or pace.")

Here, Dr. Izzi's opinion concludes Plaintiff is capable of performing simple and repetitive tasks and makes no mention of concentration, persistence, or pace in the functional assessment. (AR 366–67.)  Unlike in *Brink*, the medical evidence demonstrates that Plaintiff's difficulties with concentration, persistence, or pace could be translated into a limitation to simple, routine work.  *Bennett*, 202 F. Supp. 3d at 1127.  Accordingly, the ALJ did not err by failing to explicitly mention Plaintiff's difficulties with concentration, persistence, or pace in the hypothetical questions posed to the VE.  *See Conley*, 2017 WL 4310249, at *10 (distinguishing *Brink* where the ALJ found at Step Two that claimant had moderate limitations in concentration, persistence, and pace and relied on a medical testimony finding the claimant could still engage in simple, repetitive tasks).

Consistent with a mental RFC limiting Plaintiff to simple and routine tasks, the hearing transcript shows that the ALJ confined hypothetical questions two and three to a hypothetical claimant limited to simple and routine tasks.  (AR 60.)  The ALJ properly included the concrete limitation identified by Dr. Izzi, which the ALJ adopted in her mental RFC, and was not required to reiterate every functional limitation verbatim in each hypothetical question to the VE.  Rather, the ALJ's hypothetical question regarding a claimant limited to simple and routine tasks adequately captured the ALJ's Step Three finding that Plaintiff had moderate difficulties with concentration, persistence, or pace.  *Israel v. Astrue*, 494 F. App'x 794, 796 (9th Cir. 2012) (rejecting the claimant's argument that the ALJ disregarded his Step Three finding that the claimant had moderate difficulties in concentration, persistence, or pace, where the ALJ's mental RFC was consistent with the concrete limitations in the medical testimony); *see also Turner v. Berryhill*, 705 F. App'x 495, 498 (9th Cir. 2017) (A hypothetical question posed by a VE need not "separately mention[] [a claimant's] moderate difficulties in concentration, persistence, or pace" where the question limits the claimant to performing simple, routine tasks.); *Kehm v. Berryhill*, No. 2:16–cv–01918 AC, 2018 WL 1392887, at *6 (E.D. Cal. Mar. 20, 2018) ("To the extent plaintiff argues that the ALJ's hypothetical to the VE was incomplete because it did not

specifically include a limitation on concentration, persistence, or pace, such an argument is inconsistent with the rule in the Ninth Circuit.") (citing *Hoopai v. Astrue*, 499 F.3d 1071, 1077 (9th Cir. 2007; *Allain v. Astrue*, No. CV 09-00810-MLG, 2009 WL 3514424, at *2 (C.D. Cal. Oct. 27, 2009) (holding that the ALJ properly translated moderate difficulties in concentration, persistence, or pace at Step Three into questions to the VE by limiting the claimant to work involving "simple, routine tasks").

**B.    The ALJ's Consideration of Plaintiff's Credibility**

   **1.    Legal Standard**

In evaluating the credibility of a claimant's testimony regarding subjective pain, the ALJ must engage in a two-prong analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Id.* The claimant is not required to show that his impairment "could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom." *Id.* (quoting *Lingenfelter*, 504 F.3d at 1035–36). Second, if the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives "specific, clear and convincing reasons" for the rejection. *Id.*

As to the second prong, "[t]he clear and convincing standard is 'not an easy requirement to meet' and it 'is the most demanding standard required in Social Security cases.'" *Wells v. Comm'r of Soc. Sec.*, No. 1:17–cv–00078–SKO, 2017 WL 3620054, at *6 (E.D. Cal. Aug. 23, 2017) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014)). "General findings are insufficient" to satisfy this standard. *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (citation omitted). "[R]ather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*; *see, e.g.*, *Vasquez*, 572 F.3d at 592 ("To support a lack of credibility finding, the ALJ [is] required to 'point to specific facts in the record which demonstrate that [the claimant] is in less pain than [he] claims.'" (quoting *Dodrill*

*v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993))); *cf. Burrell*, 775 F.3d at 1138 (stating that the Ninth Circuit's "decisions make clear that [courts] may not take a general finding . . . and comb the administrative record to find specific" support for the finding).

### 2. The ALJ Properly Discounted Plaintiff's Subjective Complaints.

The ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible for several reasons:

> The evidence shows that the claimant's depression was improving in February 2015. The claimant has been determined to have fibromyalgia. However, range of motion testing of the claimant's extremities was normal, with no tenderness. Despite evidence demonstrating the claimant has suffered from medically determinable "severe" impairments, the evidence also demonstrates that the claimant retains the capacity to function adequately and perform many basic activities associated with work.

(AR 20.) In sum, in assessing Plaintiff's credibility, the ALJ relied on inconsistencies between Plaintiff's alleged symptoms and the record, including (1) his reports of activities of daily living and (2) objective medical evidence such as the improvement of Plaintiff's depressive symptoms.

### a. Activities of Daily Living

The ALJ properly considered Plaintiff's activities of daily living in determining that Plaintiff was not entirely credible. When a claimant spends a substantial part of the day "engaged in pursuits involving the performance of physical functions that are transferrable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations." *Morgan*, 169 F.3d at 600 (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)); *see also Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) ("While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting.") (internal quotation and citations omitted). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112. (citations omitted).

At the hearing, Plaintiff testified that his pain from fibromyalgia ranged from mild to severe with flare-ups lasting up to three days occurring three to four times a month. (AR 39, 46–47.) Plaintiff also testified that he gets five to six hours of sleep on a good night, which occurs three to four nights a week, but on a bad night he does not sleep at all. (AR 45–46.) Plaintiff further testified that he has concentration problems and short-term memory loss that would prevent him from remembering the hearing by the end of the week. (AR 48.) The ALJ, however, found that "the evidence also demonstrates that the claimant retains the capacity to function adequately and perform many basic activities associated with work." (AR 20.) In particular, the ALJ relied on Plaintiff's testimony that he performed some cooking and cleaning including making breakfast for his daughter and doing the dishes, and spent time watching television, listening to music and napping. (AR 19, 33–34.) The ALJ noted that Plaintiff testified he could lift 13 pounds, stand 22 minutes, walk a block and a half, and sit for 45 minutes to an hour. (AR 19–20, 42.) The ALJ also noted Plaintiff reported he visited with family and friends and had no difficulty caring for his basic hygiene. (AR 15, 364, 366.)

Given the activities of daily living identified by the ALJ, the Court finds that such activities of daily living tend to suggest that Plaintiff may still be able to perform, on a sustained basis, the basic demands of the light, unskilled jobs identified by the VE. *See Fair*, 885 F.2d at 603 (finding that if a claimant has the ability to perform activities "that involved many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent her from working"); *see also, e.g.*, *Stubbs–Danielson*, 539 F.3d at 1175 (finding that the ALJ sufficiently explained his reasons for discrediting the claimant's testimony because the record reflected that the claimant performed normal activities of daily living, including cooking, housecleaning, doing laundry, and helping her husband managing finances); *Ann Cox v. Colvin*, No. 15–cv–00190–JSC, 2015 WL 8596436, at *22 (N.D. Cal. Dec. 14, 2015) (finding ALJ's discrediting of claimant's subjective complaints to be proper where claimant, who suffered from fibromyalgia and rheumatoid arthritis, performed household chores, shopped for groceries, performed personal care tasks without assistance, prepared full meals, and drove); *Garcia v. Colvin*, No. EDCV 14–2107 AGR, 2015 WL

5568606, at *6 (C.D. Cal. Sept. 22, 2015) (ALJ properly discredited subjective complaints of claimant who suffered from fibromyalgia and rheumatoid arthritis where claimant engaged in light daily activities such as house chores, cooking, vacuuming, mopping, cleaning walls, changing beds, and caring for husband and grandchild).

To be sure, the record also contains some contrary evidence, such as Plaintiff's statements regarding his constant pains and mental impairments. However, it is the function of the ALJ to resolve any ambiguities, and the Court finds the ALJ's assessment of Plaintiff's daily activities to be reasonable and supported by substantial evidence. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (affirming ALJ's credibility determination even where the claimant's testimony was somewhat equivocal about how regularly she was able to keep up with all of the activities and noting that the ALJ's interpretation "may not be the only reasonable one").

### b. Objective Medical Evidence

The ALJ did not err in finding that the objective medical evidence fails to support Plaintiff's subjective complaints. While subjective symptom testimony cannot be rejected solely on the ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining Plaintiff's credibility. *Rollins*, 261 F.3d at 857 (citing 20 C.F.R. § 404.1529(c)(2)); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("[L]ack of medical evidence . . . is a factor that the ALJ can consider in his credibility analysis.").

Here, the ALJ discounted Plaintiff's credibility, in part, because Plaintiff's allegations of severe symptoms were not supported by the clinical evidence. Specifically, the ALJ noted Plaintiff's range of motion testing of his extremities was normal, with no tenderness. (AR 20.) The ALJ also pointed to the opinions of four physicians that independently concluded Plaintiff remained capable of a greater level of functioning than Plaintiff claimed. (AR 16–17 (Dr. Fabella), 18 (Dr. Reddy and Dr. Izzi), 19 (Dr. Garcia).) These opinions constitute evidence that Plaintiff retains the capacity to function adequately and perform many basic activities associated with work, despite Plaintiff's testimony alleging more severe limitations. *See* 20 C.F.R. §§ 404.1529(c)(4) ("We will consider . . . statements by your medical sources" when assessing

credibility.), 416.929(c)(4) (same); *Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir. 1995) (upholding an ALJ's decision to reject the claimant's claim of excessive pain where the ALJ identified the contrary opinion of claimant's examining physician as specific evidence for discounting claimant's credibility).

The ALJ also noted with respect to Plaintiff's depressive symptoms that Plaintiff's testimony was undermined by medical evidence in the record showing Plaintiff's depression was improving. (AR 20.) Specifically, Plaintiff's February 2015 treatment notes from Dr. Aguirre show that Plaintiff was seeing a mental health specialist and taking Cymbalta to treat his depression. (AR 479.) Plaintiff reported to Dr. Aguirre that Plaintiff's depression symptoms were improving and Dr. Aguirre observed at that time that Plaintiff was pleasant, alert, and in no acute distress. (AR 479–80.) The ALJ was entitled to discount Plaintiff's credibility based on his improving symptoms and successful response to medication. *See Morgan*, 169 F.3d at 599 (ALJ properly discredited the claimant's subjective complaints by citing physician's report that mental symptoms improved with medication); *Gerard v. Astrue*, 406 F. App'x 229, 232 (9th Cir. 2010) (ALJ properly discounted claimant's asserted severity of his anxiety and depression, observing in part that claimant "was responding to psychotherapy and medication"); *Urrabazo v. Colvin*, No. 1:14–CV–00309–SKO, 2015 WL 4392988, at *15 (E.D. Cal. July 17, 2015) ("[T]he ALJ was entitled to consider that Plaintiff's depressive symptoms were helped by medication, which is relevant to assessing the extent of Plaintiff's symptom testimony regarding his mental condition.").

Although inconsistences between subjective symptom testimony and objective medical evidence cannot be the sole basis for rejecting a claimant's testimony, the ALJ did not reject Plaintiff's subjective complaints *solely* on the ground that they were inconsistent with the objective medical evidence as Plaintiff contends. (Doc. 15 at 12 and Doc. 19 at 7.) Instead, the ALJ also relied on the nature of Plaintiff's activities of daily living and evidence that Plaintiff's depression was improving, as independent reasons to discredit Plaintiff. The inconsistencies between Plaintiff's complaints of severe pain and clinical observations such as Plaintiff's normal range of motion testing, taken together with evidence of Plaintiff's improvement and his

inconsistent statements relating to his daily activities, constitute clear and convincing evidence supporting the ALJ's adverse credibility finding. *See Morgan*, 169 F.3d at 600 (ALJ may properly rely on plaintiff's daily activities, and on conflict between claimant's testimony of subjective complaints and objective medical evidence in the record); *Martin v. Colvin*, No. 1:15–cv–01678–SKO, 2017 WL 615196, at *12 (E.D. Cal. Feb. 14, 2017).

## VI.      CONCLUSION AND ORDER

After consideration of Plaintiff's and the Commissioner's briefs and a thorough review of the record, the Court finds that the ALJ's decision is supported by substantial evidence and is, therefore, AFFIRMED. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security, and against Plaintiff John Gann.

IT IS SO ORDERED.

Dated:  **May 31, 2018**                          /s/ *Sheila K. Oberto*
                                                     UNITED STATES MAGISTRATE JUDGE